So you may proceed. Thank you very much. Good morning, your honors. May it please the court. This case presents a conflict between the heavy-handed actions of the state versus a city's constitutional local control, which is driven by the will of its local people. The recent overbearing legislative actions by the state are trampling not only local control, i.e., local decision-making, but in order to effectuate that overbearing state will, the state is erasing the long-standing bright lines that delineate... I don't want to interrupt you, but there is this big question here of, can you even bring this lawsuit? Do you have standing? That's the word we've used. It may not be the perfect word, but it means, can you do what you're trying to do here? And does circuit precedent actually foreclose this argument altogether? So how do you address those points? Thank you, your honor. So the circuit precedent, there's a few responses to that. One, it's pretty clear by not only Burbank but also San Juan Capistrano that the concurring opinions, those judges believe that that precedent probably will be revisited in the first place. The issue is we can't do that. We're a three-judge panel. So you would have to convince us that this precedent is either not binding or it's been made irreconcilable by some weight or authority. And I would add, your honor, that this precedent is not precedent for this case. That is precedent for cases where there is a political subdivision. That's not entirely accurate. And by the way, as you probably know, I'm sympathetic to your argument here. I wrote a concurring opinion in Capistrano saying that we've probably got it wrong. But Burbank involved a city charter just the same. So how can you say that it doesn't apply or that we've held that it doesn't apply to a subdivision like San Juan? Well, the Burbank case is an airport authority case. It's a JPA, a joint powers authority, created by Burbank, Glendale, and Pasadena, all charter cities, by the way. And they're united as a JPA under Government Code 6500. That is actually a political subdivision of the state because it's created by statute. Charter cities are not created by statute, your honor. They're created by the California Constitution. I see. So the distinction you're making is that they were charter cities, but they set up another entity.  So help me understand. Are we being disingenuous if we said charter cities are carved out from these other cases? No, there's a long history that I would love to share with this court on that very point. Are you relying on the two California statutes that you cited in your brief, or is there more than that? No, there's much more than that. First of all, just to be abundantly clear, the Gravamen or the Burbank case is an airport authority case, which is a political subdivision created by statute. The one reference to the public utilities code about a charter city being a political subdivision, the Burbank court said in that case, in that instance, that generally California holds that charter cities are political subdivisions, but that's actually not true at all. That's the problem. I think we kind of collapsed back. Aren't you just saying, well, our precedent isn't correct? No, what I'm trying to say, Your Honor, maybe not so articulately, is the Burbank case did not present a full-scale analysis to the panel at that time on what is the legal character of a charter city. And I can show you, it's in our brief, but in addition to that, the Otis case is a perfect example of the history of where charter cities are considered independent, not political subdivision state, and that stems from the California Constitution. It's Otis v. Los Angeles, 52 Calap 2nd, 605. That's a 1942 case, Your Honor, and if you look at page 611 of that case, the Otis court, which is the court of appeals, 2nd Appellate District, Division 1, said, quote, as was tersely stated in County of San Mateo v. Coburn, a county is a government agency or political subdivision of the state organized for purposes of exercising some functions of the government, whereas a municipal corporation is an incorporation of inhabitants of a specified region for purposes of local government. And then the Otis court goes on. And again, Article 11, that's of the California Constitution, so the court is now looking at the California Constitution, not state statute. The Otis court goes on to say, our state constitution provides, quote, the several counties as they now exist are hereby recognized as legal subdivisions of the state. It is the free consent of the persons comprising them that brings into existence municipal corporations, and they are used for the promotion of their own local and private advantage and convenience. Here's the thing, though. I mean, we have to, for you to win here, you have to first get out of the city of Burbank, so you've made some arguments about that. The second, though, would be, even if that case isn't binding, why would this distinction in California law matter? Because the Lake Tahoe case is a case about federal law. It's an interpretation of the Constitution, effectively, to say that state subdivisions don't have the ability to sue the state in federal court for constitutional violations. So why would it matter how exactly the state describes this? Lake Tahoe could be wrong, but by the theory of the case, I'm not sure how you are drawing this distinction in a way that matters. I understood, Your Honor. It's because Lake Tahoe and San Juan Capistrano and its subsequent cases have all recognized that, basically, as a creature of the state, the left hand can't sue the right hand. The creature can't sue the creator. And charter cities are created by the people. Well, they're not really created by the people. I mean, they're still allowed by the state. So the distinction between a charter city and a general law city or any other political subdivision is that a charter city is created by Article 11 of the California Constitution, specifically providing for the independence of a charter city. But they don't have independence from the state. Well, Your Honor, not to sound completely contrarian, but if we look at the Johnson case. Look, they're not exempt from state law. They're not exempt from state law. You're just saying it gives them a hook to challenge that state law. More than that, Your Honor, in the Johnson v. Bradley case, which is just 1992, not that long ago, the California Supreme Court said when it talked about the history of the Constitution and charter cities, it literally said that but after the Constitution of 1879 was adopted, the Supreme Court in Johnson v. Bradley declared it was manifestly the intent of the drafters of the Constitution to, quote, emancipate municipal governments from the authority Why would the federal Constitution turn on these niceties of state law? Excuse me? Why would the federal Constitution turn on these niceties of state law? Because what the case is basically saying is we do not want states, localities in here suing the subdivisions of the state, localities, municipalities suing the state. That is essentially what we have here. And that analysis requires the courts to look at the character of the plaintiff. And I would submit to this court that if this court doesn't allow charter cities and their actors, their agents, i.e., the councils and their individual council members to bring federal claims in federal court against the state of California, then it produces an absurd result. And that is to say that all of these plaintiffs now, the doors of federal court are closed to them, that they literally have no recourse. What's the state court action? What's the status of the companion case in L.A. County Superior Court? So that is now transferred to San Diego. It's up in the Court of Appeal at this point, Your Honor. It's been going on for about a— What happened in the Superior Court? Yeah, what did the trial court rule? So none of the constitutional issues presented here were raised there. It was purely a battle of the state law or the application of the state law to the city. So different issues, but the court— How is that different? You're saying there's a conflict between state law regulating low-income housing versus a city's charter autonomy from the reach of that regulation? So basically in the state court, what the city's position was is that the laws, the state laws that the state were invoking to prosecute the case against the city didn't apply to Huntington Beach as a charter city, but none of the federal questions were raised in that court. That's not my—I guess the question I'm asking is, why can't you get a resolution of this question from the California appellate courts if you're currently on appeal in San Diego? Well, the city's choice of venue in this case was the federal courts because they are important questions of federal law. I understand that, but suppose we disagree with the city's position and say you may have a cognizable claim here in state court, but you can't bring it in federal court. You're not totally out of court. Because it's not a—well, Your Honor, I mean, as far as the city's concerned, these are great questions, great federal questions of law. But can you not raise that in state court? Well, theoretically, but we had filed this suit in federal court, and at the very same time— After. Hold on. You filed it after, not at the very same time. You filed it after they filed in state court. So to be clear, we filed it the day after. Exactly. That matters. Well, Your Honor, but the— You need to be up front with the court about that. Well, their issues about the housing element weren't raised until their amended complaint three months later. I'm not sure that that matters. Right. They filed the claim in state court, amended complaint, goes back. So—and all of this gets to even if we were able to get around the standing question, why wouldn't we just rely on younger abstention and say we should defer to the state court proceeding? Well, if that were the case, it would essentially cause the city to reset the entire litigation in state court because none of these questions of federal law were brought. No, but I don't—why couldn't you have raised them? Why couldn't you have raised them as a defense? You don't need a federal answer. You need a state answer. Whether or not charter cities are immune, as it were, or separate sovereigns by virtue of the fact that they're created by the California Constitution and not by state statute. Those questions are answered by Johnson v. Bradley, by the city of Redondo Beach, by the Hitecine case. Those questions are already answered. So you're confident that you're going to win on appeal in the state court? Well, we haven't brought those questions of law to challenge in state court because we've brought them here. You're eliding my question. My question doesn't have anything to do with whether or not you should be in federal court. The question is whether or not you can obtain adequate relief in state court for which younger abstention at the federal level would be appropriate since the state action was filed first. Well, technically we probably could, but it goes to the quality of the review and the quality of the analysis. Federal courts are just better. Yeah, better. The anti-federalists disagreed with you very strongly.  I mean, honestly, Your Honor, it was a calculated decision by the city of Huntington Beach, and we know with the First Amendment, the 14th Amendment. I understand that, but you can't strategically get out of younger abstention by not bringing claims and then saying they're not being adjudicated there. Well, the question is the same. The question is whether or not you are immune. Immune may be the wrong term, but as a separate sovereign, you're not amenable to regulation by the state when it comes to local issues like housing. Well, as I said, Your Honor, I don't have an abstention before me in terms of arguing abstention. But we have an independent obligation to invoke younger abstention if the tests are met. It seems to me that they are. I don't think that they are, Your Honor, and I do know that we briefed it somewhat in our briefing. I believe that this court, frankly, can rule on the federal questions whether these housing laws as applied to Huntington Beach violate federal law without really disturbing the rulings in state court, albeit I'll acknowledge that if these laws are found unconstitutional, then there is no need for the state rulings in state court. But he would want an injunction from the federal court, essentially enjoining the state of California from enforcing the housing statute against the city of Huntington Beach. And I do think that would be appropriate, considering that this is a threshold question of whether the application of these laws is even constitutional. The Supreme Court seems to have a slightly different view of that with regard to the underpinning of younger. I understand, Your Honor. I don't think that there's a conflict. Like I said, we briefed it in our briefing. The key here is that we properly brought and advanced questions of federal law, critical and important questions of federal law, namely free speech, 14th Amendment, and Commerce Clause to the federal court. Their case was amended, the state's case was amended much later to then add these unconstitutional laws to their case against the city of Huntington Beach. Well, okay. I wonder if you shouldn't reserve some time. You've got a little bit of time left. Do you want to reserve the remainder of that, unless there's further questions? No, I will just end by saying I think Burbank is a different case. It's about the airport authority, which is a JPA, which is a creature of the state. And that reference in Burbank that California generally sees charter cities as political subdivisions just doesn't stand up against the Otis ruling, the city of Redondo Beach ruling, the Hite Design ruling, all of these court of appeal decisions from different districts, by the way, consistently throughout the state of California, courts have held, the courts of appeal have held that charter cities are independent and not political subdivisions. Thank you, Your Honor. Thank you. Thank you. So we'll hear a verse from Mr. Kinzinger. Yeah, okay. Good morning, Your Honors. May I please the court? This court's South Lake Tahoe decision, which the city has not asked the court to reconsider, controls the outcome of this case. For decades this court has held that political subdivisions and their officials cannot assert federal constitutional rights against their parent states. Even if this court were inclined to reconsider South Lake Tahoe's bright line rule, this case is the wrong vehicle to do that. You don't dispute that. You use the term political subdivision, but a charter city is actually a creature of state constitutional law, is it not? It is a creature of the state constitution. And would you equate that with a political subdivision, which I would think would be created by statute? Well, for federal constitutional purposes, Your Honor, it's the derivative nature of the city's local government. They're a municipal corporation like any other city. Adopting a city charter did not turn them into the 51st state. It's a derivative government. So it is the law of the circuit that the city does not have standing. The city argues that California state law gives it a special dispensation to pursue federal claims at federal court, but states cannot do this. What state law says is irrelevant to the question of federal standing. The Supreme Court was clear on this point in Hollingsworth v. Perry. The states cannot hand out tickets to the federal courthouse, and California did not do that here. Now, South Lake Tahoe recognized the bright line rule, which this court has reaffirmed repeatedly, including just five years ago in the city of San Juan Capistrano. Now, this court applied that same rule to bar charter city standing in the city of Burbank, which also controls this case. The Burbank court rejected the argument that a charter city had standing because state law gave it authority distinct from that of a general law city. Now, the airport authority raised and briefed the issue in that case. It specifically argued that it should not fall under the South Lake Tahoe rule because state law defined different powers to them, and this court necessarily decided that issue against them. Secondly, the court did examine state law in that case, but it did that only to note that California law is inconsistent in whether it defines charter cities as political subdivisions. It did this to reject a premise of the airport authority's argument after rejecting the airport authority's position that state law definitions controlled the question at all. Are there any other circuits that would have allowed this claim? Because my understanding is there are some circuits that maybe have a different view when it comes to claims that are grounded in the supremacy clause, like a preemption argument. I don't see that argument being made here by the city. And so would these claims be viable in any other circuit, do you know? No, Your Honor. The Second, Third, Fifth, and Tenth Circuits, to my knowledge, they permit supremacy clause claims from political subdivisions, but other substantive constitutional provisions, those claims are barred when being brought by political subdivisions. And that stems from Supreme Court precedent, which holds that, again, political subdivisions do not have due process rights against their states. So under South Lake Tahoe, the city officials do not have standing here either. That case included plaintiffs. The plaintiffs included the mayor and city council members of the city. Now South Lake Tahoe held that the city official plaintiffs did not have a personal stake in the controversy and that they were simply attempting to circumvent the bar to political subdivision standing. And the same is true here. Could these constitutional arguments have been raised in the state court proceeding? Yes, Your Honor. The state court proceeding provides a full forum for them to raise these federal constitutional arguments. Were they raised there or have they been raised there? Not to date in our action. So right now the state court proceeding began with the state initiating basically enforcement action against the city, saying you've got to comply with state law. Correct, Your Honor. And that would have been a proper vehicle for them to come back and say, no, we don't because this is unconstitutional. Yes, Your Honor. They had every right to assert that as an affirmative defense and brief that to the court. And right now where is it at? I'm not sure I get the full answer on that. The Superior Court went your way on that case? Yes. It ruled in, I believe it was June 20th, that the city had an obligation to follow the housing element law and bring its housing element into compliance. And they have appealed that to the California Court of Appeals. What's the timeline on that? Do you know? I'm not certain on that. We've also cross-appealed because certain forms of relief were not included by the trial courts.  What forms of relief were not included that you wanted? Injunctive relief that would require the city to essentially adopt its housing elements and comply with the California state housing laws. And the individual officials did not raise the claim that they were being asked to sign a fraudulent certification with regard to the environmental impacts of the proposed expansion of housing? I don't believe that issue was briefed, Your Honor. In the face of an enforcement action seeking to, what, assess civil penalties and injunctive relief for not complying with state law? Yes, Your Honor. The city raised arguments that the California housing element law did not apply to them because they were a charter city, kind of turning on the charter city general law city distinction, which, to be fair, is relevant in state courts, but not here for federal standing purposes. Now, South Lake Tahoe held that city official plaintiffs, they did not have a personal stake in the controversy, and here the city officials are suing in their capacity as elected officers of Huntington Beach, and they're trying to vindicate the city's own claimed interest in disobeying the state's housing laws. Now, they claim the consequences for their refusal to adopt a compliant housing element are punishments for official speech, but, again, this does not state an injury in fact specific to them. Every consequence they complain about falls in the city, whether it's increased housing density or a state court enforcement action, which has transpired. That's because the state's housing and environmental laws regulate cities, they do not regulate people. And even if this court was inclined to reconsider the bright-line rule of South Lake Tahoe, which, again, the city has not asked it to do, this case is not the right vehicle. Now, the city and city officials are trying to assert constitutional claims the Supreme Court has already held they do not possess. This was true in 1907 when the Supreme Court decided Hunter v. Pittsburgh. It was true in 2009 when the court decided Esursa. And it remains true today. The city is not protected by the First or Fourteenth Amendments, at least in federal court against its parent state. The city officials claim the First Amendment completely shields their votes and speech in their official capacities, but this is not true either. Justice Scalia already explained in Nevada v. Kerrigan a city council member's vote is not a protected expressive activity. And the Supreme Court reaffirmed just this year in Linkey v. Freed the First Amendment does not protect the speech of public officials. You would agree, though, no matter how we decide this case, the merits are really not before us, right? Because, I mean, I guess technically they could be, but the district court never weighed in on the merits, so it would be odd for us to reach out. Correct, Your Honor. This case turns narrowly on the issue of standarding. This court could alternatively affirm the district court on the merits. That was fully briefed in the district court and also briefed in our brief. All right. Thank you. May it please the Court. Good morning, Your Honors. David Meritu for Appellee Southern California Association of Governments, known as SCAG. So this case concerns a simple application of a well-established Ninth Circuit rule that government entities within a state, which are referred to often in the case law as political subdivisions, do not have standing to sue the state based on federal constitutional grounds. The Ninth Circuit decision that announced this rule, of course, was South Lake Tahoe, which held that political subdivisions lack standing to sue the state on federal constitutional grounds and also held that elected officials of those political subdivisions also lack standing because their interests are either derivative of the city or the political subdivision at stake or... Do you understand South Lake Tahoe to... I mean, when South Lake Tahoe was issued, standing was a bit more of an amorphous concept than it is today. Do you understand it to be a standing in the sense of Article III standing, or do you understand it to be something different than that? Thank you, Your Honor. I think ultimately it probably doesn't make a difference in this case. You know, if we look at standing, if the way that City of South Lake Tahoe used standing was more like the way we typically think of standing now, I know that there's been discussion in the other courts about whether that was appropriate because it was based on prior decisions where the concept of standing was different. It meant more something like, does the entity have a viable claim? And I think you get to the same result here no matter what. The question is, do these political subdivisions have these constitutional rights vis-à-vis the state that they're in? Yeah, the only way in which it might matter is whether we have to reach it first because here we're being presented with this standing argument. We also have an abstention argument. If something goes to Article III jurisdiction, we have to decide it first. If it doesn't, we can go in different orders depending on the case. Do you think it's jurisdictional in the sense in which that term is now understood? Well, I mean, I appreciate the question, Your Honor. Under City of South Lake Tahoe, it was framed as a jurisdictional issue. I think that's the binding precedent. So here I think the district court was correct in treating it as jurisdictional and couldn't reach any other questions. Right, but does that make sense? I mean, if a city has a completely meritless First Amendment claim, do we really need to go through this song and dance about South Lake Tahoe or could we just say this claim fails? Your Honor, do you mean if they had a meritless First Amendment claim based on First Amendment law or based on this principle announced in City of South Lake Tahoe? Based on any other ground because the argument that we're being presented with here is that this political subdivision is a little different. It has a city charter that's different, and we would have to work through all that issue. But at the end of the day, there's some other problems here like abstention, which is a problem. There's probably some other issues with the case as well. And one question is in which order do we need to proceed here because if it's jurisdictional under South Lake Tahoe, you would think we would have to deal with that first. Yeah, I mean, I think under the circuit law, it's jurisdictional. But I understand that there has been an analysis of whether that's completely accurate. And so that may be a decision for another court to look into. But I think here it's the binding precedent. But if the city doesn't have standing, then we don't have any authority to proceed further, do we? I think that's correct, Your Honor. Yes. Depending on what kind of standing we're talking about. To the point of charter cities, one of the things I just wanted to make clear is that the city tries to make this point that charter cities are somehow different because they're not created by legislative enactment. They're not under as much control of the legislature. And I think that's completely incorrect. I think the point for a city of South Lake Tahoe's rule is that, as counsel for the state said, you're talking about a state entity. You know, it's not the 51st state. It is an entity within California. That's what the Constitution cares about, not whether the state of California has decided within itself, based on its Constitution, based on legislative enactments, whatever it might be, to give a particular entity more or less power or more or less independence from the legislature. So I just want to make that crystal clear that I don't think that the status of a charter city having more or less autonomy from the legislature changes anything here. And just to follow up, Judge Bress asked the state about other circuits. Are you aware of any other cases that would make an exception to political subdivision standing outside of the Supremacy Clause cases? Your Honor, first of all, I'm unaware of any case deciding this city of South Lake Tahoe's standing issue based on whether it's a charter city or not. As to other constitutional claims, it's not the rule in the Ninth Circuit. In the Ninth Circuit, even Supremacy Clause claims are included. I understand. I'm just trying to figure – I mean, they raise First Amendment claims. Is there any other circuit where First Amendment claims or, say, federal constitutional claims other than supremacy claims would be recognized as an exception to political subdivision standing? I'm unaware of any federal case where the city could bring the claim it brought here and get past this no-standing rule, whether it's under the city of South Lake Tahoe or under one of the other circuits' decisions. There have been no exceptions for First Amendment, no exceptions for the other claims that are made here. The only exception that has been made in some other circuits is the Supremacy Clause, and that's not at issue here. There isn't a Supremacy Clause claim. There are different considerations that go into a Supremacy Clause claim, but, again, it's just not at issue here. Counselor, can you help me with the administrative framework here? Because I understand that the state allocates a certain percentage of housing units to each city, and if the city doesn't like that allocation, it appeals to your client, and it did that, and it lost before the Southern California Council of Governments. And then is that the final administrative decision that then triggers review in the state courts? Does that all have to occur before the state can file their action in Superior Court? Thank you, Your Honor. You're absolutely right. There is that administrative process, and that administrative process was followed here. The city did appeal the allocation of housing units. But that goes only to the quantification. It doesn't really address the issue of whether local officials are being compelled to sign these certificates against their will. Correct. And there is no judicial review of that administrative decision. So however many housing units SCAG says you've got to build, the city has to build. Well, again, the total number of housing units is established by the state, and then the different regional governments determine the allocation within their areas, and there's a process for that. Right, and that didn't change. Whatever the initial allocation was, it stayed the same. Correct, Your Honor. And that's all that the Southern California Council decided. Correct, Your Honor. Okay. And I think I'm out of time. If you have any questions, I'd be happy to address them. Otherwise, we ask that you affirm the decision below. Thank you. We'll give one minute for rebuttal. Thank you, Your Honor. So there is no judicial review of the SCAG determination, which is part of the city's case, that it's an unconstitutional set of laws. The lower court's decision rests on whether Huntington Beach is a political subdivision. That's the question, and it relied on South Lake Tahoe. South Lake Tahoe doesn't apply to this case because it's a general law city. This is a charter city. It is a creature of the Constitution, and as Johnson v. Bradley states by the California Supreme Court, that the draft of the Constitution emancipated charter cities from the authority of the state legislature. And Fregley went on to say— They're not emancipated from the standpoint of the federal Constitution. The city of Huntington Beach is not some free-floating entity that gets to do whatever it wants and call itself whatever it wants, and it's not a city of the state of California. I just don't understand this argument. Well, there's no case that bars a nonpolitical subdivision from bringing a federal claim in federal court. The only cases cited thus far are cases that say a political subdivision cannot. We are not a political subdivision, and the lower court relied on that case, and it even cited Burbank. The city of Huntington Beach is not a political subdivision. Let me ask you this, kind of the counter question to opposing counsel here. Are there any cases outside of the Ninth Circuit where you could bring this claim? Has anyone recognized this charter city exception that you're asking for? So there are cases in other circuits, like you indicated, Your Honor, mostly under the Supremacy Clause. I think the rub is— But those wouldn't apply here, so that's what I'm wondering is, what is your framework that you would have us look to that would allow these claims to go forward? And that's why, Your Honor, we started our briefing by saying that this is a case of first impression, that this is a novel concept. So that was my question, but you have nothing else, even outside of the Ninth Circuit, to point to? Well, I'm not sure that they would be applicable because every state constitution is different, providing for its cities in a different and unique way, and every city in each state is different. I'm just asking, one case anywhere, federal district court, federal appellate court, anything that would allow a city of any nature to bring a claim? Case of first impression.  I think we have your argument. Thank you, Your Honor. Thank you. The case is now submitted. Thank you to both counsel for your arguments in the case.
judges: TALLMAN, NELSON, BRESS